**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AVIA BIBEAU | : | |
| PLAINTIFF | : | CIVIL ACTION - LAW |
| | : | |
| V. | : | JURY TRIAL DEMANDED |
| | : | |
| EAST STROUDSBURG UNIVERSITY | : | NO: _____ |
| | : | |
| EAST STROUDSBURG UNIVERSITY POLICE DEPARTMENT | : | |
| | : | |
| WILLIAM PARRISH | : | |
| | : | |
| NICK TIMAR | : | |
| | : | |
| LANETTE JONES | : | |
| | : | |
| MARIA CUTSINGER | : | |
| | : | |
| KENNETH LONG | : | |
| | : | |
| JENNIE SMITH | : | |
| DEFENDANTS | : | |

**COMPLAINT**

AND NOW comes Plaintiff, Avia Bibeau, by and through her counsel, Comerford Law, who files this Complaint, averring as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights protected by the 4th and 14th Amendments to the United States Constitution, Title IX, 20 U.S.C. § 1681, *et seq*, and Pennsylvania Law.

2. Jurisdiction is vested in this Court under the provisions of 28 U.S.C.A. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate State Law claims.

3. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b) because it is where all parties reside and/or do business and where the events complained of herein occurred.

## PARTIES

4. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

5. Plaintiff, Avia Bibeau, is an adult, competent individual who, at all times relevant to this cause of action, resided in the Middle District of Pennsylvania, and who was a student at East Stroudsburg University.

6. Defendant, East Stroudsburg University ("Defendant University") was, at all times relevant to this Complaint, a governmental subdivision of the Commonwealth of Pennsylvania, operating under the laws of the Commonwealth of Pennsylvania, receiving federal funding pursuant to Title IX, and acting under color of state law as well as an educational institution under Title IX.

7. Defendant, East Stroudsburg University Police Department ("Defendant PD") was, at all times relevant to this Complaint, a governmental subdivision of the Commonwealth of Pennsylvania, operating under the laws of the Commonwealth of Pennsylvania, receiving federal funding pursuant to Title IX, and acting under color of state law as well as an educational institution under Title IX.

8. Defendant, William Parrish ("Defendant Parrish") was at all times relevant to this Complaint the Chief of Police of Defendant PD and was acting under color of state law in the scope of his employment as a police officer for Defendant University and Defendant PD.  He is being sued in his individual capacity.

9. Defendant, Nick Timar ("Defendant Timar") was at all times relevant to this Complaint a police officer at Defendant PD and was acting under color of state law in the scope of his employment as a police officer for Defendant University and Defendant PD.  He is being sued in his individual capacity.

10. Defendant, Lannette Jones ("Defendant Jones") was at all times relevant to this Complaint the Title IX Coordinator for Defendant University and was acting under color of state law in the scope of her employment with Defendant University.  She is being sued in her individual capacity.

11. Defendant, Maria Cutsinger ("Defendant Cutsinger") was at all times relevant to this Complaint the Director of Student Conduct and Community Standards for Defendant University and was acting under color of state law in the scope of her employment with Defendant University.  She is being sued in her individual capacity.

12. Defendant, Kenneth Long ("Defendant Long") was at all times relevant to this Complaint the Interim President for Defendant University and was acting under color of state law in the scope of her employment with Defendant University. He is being sued in his individual capacity.

13. Defendant, Jennie Smith ("Defendant Smith") was at all times relevant to this Complaint the Dean of Student Life for Defendant University and was acting under color of state law in the scope of her employment with Defendant University.  She is being sued in her individual capacity.

14. The Defendants acted willfully, deliberately, maliciously, and/or with reckless disregard of Plaintiff's Constitutional and Statutory Rights.

15. Defendants engaged in the aforesaid conduct for purposes of violating Decedent's Constitutional rights by subjecting him to excessive force and unlawful seizure/arrest.

**FACTS**

16. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

17. At all times relevant to this Complaint, Plaintiff was a student at Defendant University, having begun her freshman year there in August 2020.

18. After attending her first semester virtually, due to the COVID-19 pandemic, Plaintiff moved into on-campus housing in January 2021.

3

19. During the Spring 2021 semester, Plaintiff entered into a relationship with Griffith Schultz.

20. Schultz quickly became mentally and physically abusive to Plaintiff, often confining her to his dorm room through physical and mental coercion for days, caused her to miss class and suffer emotional and physical trauma.

21. This abuse continued into the summer of 2021, when Schultz physically assaulted Plaintiff while on vacation, causing Plaintiff to end the relationship.

22. In August 2021, both Plaintiff and her parents contacted Defendant PD on numerous occasions, informing Defendant PD of Schultz' abuse and seeking protection for Plaintiff while on campus in the upcoming school year.

23. Defendant Timar told Plaintiff and her parents to report any instances of abuse on campus and promised to take action against Schultz should any such report be received.

24. On August 29, 2021, Schultz harassed and stalked Plaintiff at her off-campus place of work and was removed by Stroud Area Regional Police.

25. Later that day, Schultz came to Plaintiff's on-campus dorm room and physically assaulted her; he also harassed her in person and on social media.

26. All of the foregoing behavior on August 29, 2021, was reported to Defendant PD.

27. Defendant PD took no action and did not advise Plaintiff of any of the rights or remedies available to her.

28. On September 14, 2021, Schultz twice forced his way into Plaintiff's dorm room and physically assaulted her.

4

29. Also in September 2021, Schultz pinned a pair of Plaintiff's underwear to her door with a note that she left them in his room for everyone to publicly see.

30. Plaintiff reported all of these September 2021 incidents to Defendant PD.

31. While returning to her dorm room after making this report, Plaintiff was accosted by Schultz, who told an assembled crowd that Plaintiff was "a dumb ass bitch and a whore" who called the cops on him.

32. The crowd also began to harass Plaintiff, and Plaintiff had to be rescued from the crowd.

33. The foregoing incident was reported to Defendant PD, specifically to Defendant Parrish. Plaintiff made multiple reports to him in September and October 2021.

34. Plaintiff also made multiple reports to Defendant University's Title IX Coordinator, Defendant Jones.

35. Parrish took no action.

36. Jones promised Plaintiff that she would issue a no contact order on her behalf against Schultz, prohibiting him from having contact with her. She never issued that order.

37. On October 11, 2021, Defendant University's Director of Student Conduct and Community Standards, Defendant Cutsinger, called Plaintiff into her office.

38. Cutsinger forbid Plaintiff to enter her dormitory and ordered her to move dormitories.

39. No restrictions were placed against Schultz.

40. As soon as Plaintiff moved into her new dormitory, Schultz began to show up there and harass her.

41. Plaintiff reported this to Defendant Cutsinger, who refused to help.

42. Plaintiff then went to Defendant Parrish and asked that Schultz be banned from her new dormitory; Defendant Parrish refused to help.

43. On November 6, 2021, Schultz sent a group of females to Plaintiff's dormitory to harass her; they called her "slut" and "whore" repeatedly.

44. Plaintiff reported this to Defendant PD, and they took no action.

45. Plaintiff sent an email to Defendant University President, Kenneth Long, reporting the abuse and begging for help; she did not receive a response.

46. On November 7, 2021, Schultz threatened Plaintiff that he was going to send the same group of women to harass her again at her wrestling tournament.

47. Plaintiff's parents notified Defendant PD immediately.

48. Defendant PD failed to take action, and the group of females again harassed Plaintiff.

49. All of the foregoing was reported to Defendant Jones.

50. On November 9, 2021, Plaintiff's wrestling coach took her to the Title IX office to make another formal complaint. No action was taken.

51. In December 2021, Schultz imprisoned Plaintiff in his dorm room on multiple occasions, sexually and physically assaulting her.

52. On December 17, 2021, one of these assaults was caught on tape in a university elevator.

53. Plaintiff went to Defendant PD and Defendant Parrish, who watched the video of the violent assault.

54. Still, Defendant Parrish failed to take action.

55. On separate occasions in December 2021, Plaintiff and her parents went into the Title IX office and reported the abuse to Defendant Jones and Defendant University's Dean of Student Life, Defendant Smith.

56. No action was taken.

57. In January 2022, Plaintiff's parents repeatedly reached out to the Title IX office for help; no action was taken.

58. On February 9, 2022, as a result of the complete ineptitude, incompetence, indifference, and failure to act of Defendants, Schultz broke into Plaintiff's dorm room and assaulted her, nearly killing her.

59. Schultz strangled Plaintiff.

60. Schultz was prosecuted and convicted.

61. This was all reported to Defendant University, and still, nothing was done.

62. As a result of the foregoing, Plaintiff has been diagnosed with post-traumatic stress disorder.

63. Plaintiff has failed or been unable to complete a number of classes.

64. Plaintiff was forced to attend summer school.

65. Plaintiff's grades suffered.

66. Plaintiff has suffered physical and emotional pain and suffering.

### Count I: Title IX
### Deliberate Indifference to Sex Discrimination and Heightened Risk of Sex Discrimination
### Plaintiff v. All Defendants

67. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

68. Defendants had actual knowledge of Schultz' sexual harassment and violence perpetrated upon Plaintiff.

69. Schultz was under substantial control of the Defendants as a student and resident of Defendant University's campus.

70. All of the complained of harassment occurred on campus.

71. Schultz' harassment of Plaintiff was based on gender.

72. Schultz' harassment of Plaintiff was so severe and pervasive that it effectively barred her educational opportunities.

73. Defendants were deliberately indifferent to Schultz' harassment of Plaintiff.

74. Defendants' pattern of indifference to Schultz' assaults upon Plaintiff heightened the risk that he would continue to assault Plaintiff in the future.

75. Defendants' deliberate indifference caused Schultz' assaults upon Plaintiff.

### Count II: Title IX
### Hostile Educational Environment
### Plaintiff v. All Defendants

76. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

77. All of the foregoing caused Plaintiff to suffer from a hostile educational environment.

### Count III: Title IX
### Retaliation by Withholding Protection and Failure to Protect
### Plaintiff v. All Defendants

78. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

79. Defendants retaliated against Plaintiff's verbal reports of Schultz' harassment by failing to protect her from Schultz' future attacks.

80. Furthermore, by promising to protect Plaintiff following her reports and failing to take any subsequent action to protect her, Defendants caused her further injury.

## Count IV:42 U.S.C. § 1983
## First Amendment Retaliation
## Plaintiff v. All Defendants

81. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

82. Plaintiff exercised her First Amendment Rights to make complaints of abuse to Defendants, and they retaliated against her by failing to provide her with protection which they were duty bound to provide.

## Count V:42 U.S.C. § 1983
## Violation of Fourteenth Amendment Substantive Due Process
## Failure to Protect
## Plaintiff v. All Defendants

83. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

84. Both Plaintiff and her parents made numerous reports of Schultz' abuse to police and the University.

85. Schultz knew that these reports were made.

86. Defendants refused to take action based on these reports.

87. Schultz' knew of this refusal to take action.

88. Defendants' failure to act implicitly and affirmatively encouraged Schultz to continue his abuse, knowing the police would not act, and caused further assaults upon Plaintiff.

89. Defendants' actions were outrageous and egregious and increased the risk of future harm to Plaintiff.

**Count VIII: Pennsylvania Human Relations Act
Discrimination on the Basis of Sex and Failure to Protect
Plaintiff v. All Defendants**

90. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

91. Defendants had actual knowledge of Schultz' sexual harassment and violence perpetrated upon Plaintiff.

92. Schultz was under substantial control of the Defendants as a student and residence of Defendant University's campus.

93. All of the complained of harassment occurred on campus.

94. Schultz' harassment of Plaintiff was based on gender.

95. Schultz' harassment of Plaintiff was so severe and pervasive that it effectively barred her educational opportunities.

96. Defendants were deliberately indifferent to Schultz' harassment of Plaintiff.

97. Defendants' pattern of indifference to Schultz' assaults upon Plaintiff heightened the risk that he would continue to assault Plaintiff in the future.

98. Defendants' deliberate indifference caused Schultz' assaults upon Plaintiff.

**Count IX: Pennsylvania Fair Educational Opportunities Act
Discrimination on the Basis of Sex and Failure to Protect
Plaintiff v. All Defendants**

99. Plaintiff incorporates all averments – both preceding and following the instant averment – as if set forth at length herein.

100. Defendants had actual knowledge of Schultz' sexual harassment and violence perpetrated upon Plaintiff.

10

101. Schultz was under substantial control of the Defendants as a student and residence of Defendant University's campus.

102. All of the complained of harassment occurred on campus.

103. Schultz' harassment of Plaintiff was based on gender.

104. Schultz' harassment of Plaintiff was so severe and pervasive that it effectively barred her educational opportunities.

105. Defendants were deliberately indifferent to Schultz' harassment of Plaintiff.

106. Defendants' pattern of indifference to Schultz' assaults upon Plaintiff heightened the risk that he would continue to assault Plaintiff in the future.

107. Defendants' deliberate indifference caused Schultz' assaults upon Plaintiff.

WHEREFORE, on all counts, Plaintiff demands judgment in her favor as well as compensatory damages, punitive damages, attorney's fees, costs, and interest.

Respectfully Submitted:

COMERFORD LAW

*/s/ Matthew T. Comerford, Esquire*

Matthew T. Comerford, Esquire
matt@comerford.law

*/s/ Curt M. Parkins, Esquire*

Curt M. Parkins, Esq.
curt@comerford.law
Attorneys for Plaintiff
538 Biden Street, Suite 430
Scranton, PA 18503
570-880-0777
570-880-0476 (fax)

11