## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AVIA BIBEAU,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:24-CV-00248** |
| | : | **(JUDGE MARIANI)** |
| **EAST STROUDSBURG UNIVERISTY,** | : | |
| **EAST STROUDSBURG UNIVERSITY** | : | |
| **POLICE DEPARTMENT,** | : | |
| **WILLIAM PARRISH, NICK TIMAR,** | : | |
| **LANETTE JONES, MARIA CUTSINGER,** | : | |
| **KENNETH LONG, JENNIE SMITH** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.     INTRODUCTION

Presently before the Court is Defendants' East Stroudsburg University, East Stroudsburg University Police Department (the "Institutional Defendants"), William Parrish, Nick Timar, Maria Cutsinger, Kenneth Long, and Jennie Smith (the "Individual Defendants") (collectively, the "Commonwealth Defendants") partial motion to dismiss Plaintiff's complaint. (Doc. 11).

For the reasons that follow, the Commonwealth Defendants' partial motion to dismiss will be granted as set forth herein.

## II.    BACKGROUND

On February 9, 2024, Plaintiff Avia Bibeau filed a complaint against the Commonwealth Defendants.  (Doc. 1).  The underlying factual background of Plaintiff's Complaint is as follows:

Plaintiff was a student at Defendant East Stroudsburg University and moved into on-campus housing in January 2021.  Compl. ¶ 18.  Shortly thereafter, "Plaintiff entered into a relationship with Griffith Schultz."  *Id.* at ¶ 19.  Schultz "quickly became mentally and physically abusive to Plaintiff, often confining her to his door room through physical and mental coercion for days, caused her to miss class and suffer emotional and physical trauma."  *Id.* at ¶ 20.  "This abuse continued into the summer of 2021, when Schultz physically assaulted Plaintiff while on vacation, causing Plaintiff to end the relationship."  *Id.* at ¶ 21.

In August of 2021, both the Plaintiff and her parents "contacted Defendant PD on numerous occasions, informing Defendant PD of Schultz' abuse and seeking protection for Plaintiff while on campus in the upcoming school year."  *Id.* at ¶ 22.  In response, Defendant Timar told Plaintiff and her parents "to report any instances of abuse on campus" and "promised to take action against Schultz should any such report be received."  *Id.* at ¶ 23.

On August 29, 2021, "Schultz harassed and stalked Plaintiff at her off-campus place of work and was removed by Stroud Area Regional Police."  *Id.* at ¶ 24.  Later that day, "Schultz came to Plaintiff's on-campus dorm and physically assaulted her; he also harassed

her in person and on social media." *Id.* at ¶ 25.  These incidents were reported to the Defendant Police Department.  *Id.* at ¶ 26.  However, "Defendant PD took no action and did not advise Plaintiff of any of the rights or remedies available to her." *Id.* at ¶ 27.

"On September 14, 2021, Schultz twice forced his way into Plaintiff's dorm room and physically assaulted her." *Id.* at ¶ 28.  That same month, "Schultz pinned a pair of Plaintiff's underwear to her door with a note that she left them in his room for everyone to publicly see." *Id.* at ¶ 29.  "Plaintiff reported all of these September 2021 incidents to Defendant PD." *Id.* at ¶ 30.  After making this report, "Plaintiff was accosted and harassed by Schultz and other students, and "had to be rescued from the crowd." *Id.* at ¶¶ 31-32.  This incident was reported to Defendant PD and Defendant Parrish, but "Parrish took no action." *Id.* at ¶¶ 33, 35.

"On October 11, 2021, Defendant University's Director of Student Conduct and Community Standards, Defendant Cutsinger, called Plaintiff into her office," i*d.* at ¶ 37, and Cutsinger "forbid Plaintiff to enter her dormitory and ordered her to move dormitories." *Id.* at ¶ 38.  "No restrictions were placed against Schultz." *Id.* at ¶ 39.  "As soon as Plaintiff moved into her new dormitory, Schultz began to show up there and harass her." *Id.* at ¶ 40. "Plaintiff reported this to Defendant Cutsinger, who refused to help," *id.* at ¶ 41, and "then went to Defendant Parrish and asked that Schultz be banned from her new dormitory; Defendant Parrish refused to help." *Id.* at ¶ 42.

On November 6, 2021, "Schultz sent a group of females to Plaintiff's dormitory to harass her," *id.* at ¶ 43, and "Plaintiff reported this to Defendant PD, and they took no action." *Id.* at ¶ 44. Plaintiff then "sent an email to Defendant University President, Kenneth Long, reporting the abuse and begging for help; she did not receive a response." *Id.* at ¶ 45. The following day, "Schultz threatened Plaintiff that he was going to send the same group of women to harass her again at her wrestling tournament." *Id.* at ¶ 46. Plaintiff's parents notified the Defendant Police Department immediately, *id.* at ¶ 47, but "Defendant PD failed to take action, and the group of females again harassed Plaintiff." *Id.* at ¶ 48. And on November 9, 2021, "Plaintiff's wrestling coach took her to the Title IX office to make another formal complaint," but "[n]o action was taken." *Id.* at ¶ 50.

In December of 2021, "Schultz imprisoned Plaintiff in his dorm room on multiple occasions, sexually and physically assaulting her." *Id.* at ¶ 51. One of these assaults "was caught on tape in a university elevator." *Id.* at ¶ 52. Plaintiff went to Defendant Police Department and Defendant Parrish on December 17, 2021. *Id.* at ¶ 53. Although Defendant Parrish "watched the video of the violent assault," *id.*, he "failed to take action." *Id.* at ¶ 54. "On separate occasions in December 2021, Plaintiff and her parents went into the Title IX office and reported the abuse to . . . Defendant University's Dean of Student Life, Defendant Smith." *Id.* at ¶ 55. However, "[n]o action was taken." *Id.* at ¶ 56.

"In January 2022, Plaintiff's parents repeatedly reached out to the Title IX office for help; no action was taken." *Id.* at ¶ 57. On February 9, 2022, "as a result of the complete

ineptitude, incompetence, indifference, and failure to act of Defendants, Schultz broke into

Plaintiff's dorm room and assaulted her, nearly killing her." *Id.* at ¶ 58.  Plaintiff alleges that

she was strangled by Schultz, *id.* at ¶ 59, and as a result "Schultz was prosecuted and

convicted." *Id.* at ¶ 60.  "This was all reported to Defendant University, and still, nothing was

done." *Id.* at ¶ 61.

As a result of the foregoing alleged conduct Plaintiff: (1) has been diagnosed with

post-traumatic stress disorder, *id.* at ¶ 62, (2) has failed or been unable to complete a

number of classes, *id.* at ¶ 63, (3) was forced to attend summer school, *id.* at ¶ 64, (4)

grades suffered, *id.* at ¶ 65, and (5) has suffered physical and emotional pain and suffering.

*Id.* at ¶ 66.

In the Complaint, Plaintiff asserts seven counts against all the Commonwealth

Defendants.  Those counts are:

- Count I: "Title IX Deliberate Indifference to Sex Discrimination and Heightened Risk of Sex Discrimination." *Id.* at 7-8.

- Count II:  "Title IX Hostile Educational Environment." *Id.* at 8

- Count III:  "Title IX Retaliation by Withholding Protection and Failure to Protect." *Id.*

- Count IV:  "42 U.S.C. § 1983 First Amendment Retaliation." *Id.* at 9.

- Count V:  "42 U.S.C. § 1983 Violation of Fourteenth Amendment Substantive Due Process Failure to Protect." *Id.*

- Count VI: "Pennsylvania Human Relations Act Discrimination on the Basis of Sex and Failure to Protect." *Id.* at 10.

- Count VII: "Pennsylvania Fair Educational Opportunities Act Discrimination on the Basis of Sex and Failure to Protect." *Id.*[1]

On April 23, 2024, the Commonwealth Defendants filed a partial motion to dismiss, (Doc. 11), and the Court received Defendants' brief on May 28, 2024. (Doc. 15).  In its brief, the Commonwealth Defendants raised the following arguments in supports of its partial motion to dismiss: (1) Plaintiff impermissibly seeks to hold Individual Defendants liable under Title IX; (2) Plaintiff seeks punitive and emotional distress damage not permissible under Title IX; (3) Defendant university and Defendant Police Department are state institutions that are not "persons" under § 1983 and therefore not subject to liability; (4) Defendants Timar, Long, and Smith lack the personal involvement necessary for individual liability pursuant to § 1983; (5) Plaintiff fails to state a claim for First Amendment retaliation against Defendants Parrish, Timar, Cutsinger, Long, and Smith because these defendants took no affirmative actions that would deter a person of ordinary firmness from exercising her constitutional right; (6) Plaintiff does not state a viable constitutional claim for failure to protect based on a theory of state created danger under the Fourteenth Amendment and §

---

[1]      Plaintiff incorrectly identifies Count VI and Count VII as Count VIII and IX in the Complaint.  The Court will refer to these causes of actions as Count VI and Count VII, respectively.

1983; and (7) the PHRA and PFEOA Claims are barred by the Eleventh Amendment.  *Id.* at

5-16.

In response, Plaintiff filed a brief in opposition.  (Doc. 19).  Notably, Plaintiff agrees

with the Commonwealth Defendants that many of her causes of actions should be

dismissed.  More specifically, Plaintiff states that:

> Plaintiff does not object to the individual Defendants being stricken from the Title IX claims in their individual capacities.  Plaintiff does not object to the dismissal of punitive and emotional distress damages in regard to her Title IX claims.  Plaintiff agrees that East Stroudsburg University and East Stroudsburg University Police are not persons for § 1983 purposes and are immune from PHRA and PFEOA.  In regard to Plaintiff's First Amendment Retaliation claim, after a review of the briefs and caselaw, Plaintiff agrees that this claim is not sufficiency pled.  Plaintiff requests leave to amend to include the specific affirmative retaliatory acts complained of.  Remaining for decision are Defendants' claims that Plaintiff has not adequately pled state created danger or personal involvement of certain defendants.

*Id.* at 1-2.

The Commonwealth Defendants submitted their reply brief on August 15, 2024.

(Doc. 22).  The brief sets forth several arguments explaining why this Court should partially

dismiss Plaintiff's complaint and, "[i]f the Commonwealth Defendants' motion is successful,

Plaintiff and the Institutional Defendants will proceed to discovery under the Title IX claims."

*Id.* at 2.  More specifically, the Commonwealth Defendants claim: (1) Plaintiff's claim that the

alleged action of Commonwealth Defendants violated her Fourteenth Amendment right to

Substantive Due Process on the theory of state-created danger fails as a matter of law; and

(2) Defendants Timar, Long, and Smith lack the personal involvement necessary for

individual liability pursuant to § 1983.  *Id.* at 2-7.

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S.

at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

## IV.   ANALYSIS

### A. Title IX - Plaintiff Consents to Dismissal Against Individual Defendants

In Counts I, II, and III Plaintiff asserts several Title IX causes of action against the Commonwealth Defendants.  The claims asserted in Counts I, II, and III are directed at the Individual Defendants in their individual capacity and against the Institutional Defendants. However, as Plaintiff concedes, it "does not object to the individual Defendants being stricken from the Title IX claims in their individual capacity." (Doc. 19 at 1).  Accordingly, the Court will dismiss Counts I, II, and III as to the Individual Defendants William Parrish, Nick Timar, Maria Cutsinger, Kenneth Long, and Jennie Smith.[2]  Counts I, II, and III alleging

---

[2]      Defendant Lanette Jones is represented by separate counsel in this action.  Although counsel for Defendant Jones filed a motion to dismiss for lack of jurisdiction, (Doc. 12), the motion has been deemed withdrawn for failure file a brief in support of the motion.  (Doc. 18).

violations of Title IX, 20 U.S.C. § 1681 *et seq.*, may proceed only against the Institutional

Defendants - East Stroudsburg University and East Stroudsburg University Police

Department.

In addition, the Court will grant the Commonwealth Defendants' motion to dismiss

Plaintiff's claim for punitive and emotional distress damages in Counts I, II, and III.  As

Plaintiff acknowledged in her opposition brief, it "does not object to the dismissal of punitive

and emotional distress damages in regard to her Title IX claims."  (Doc. 19 at 1).

### B.  Section 1983 Claims – Plaintiff Consents to Dismissal Against the Institutional Defendants

In Counts IV and V of the Complaint, Plaintiff brings causes of action against the

Commonwealth Defendants under 42 U.S.C. § 1983 alleging First Amendment Retaliation

and a violation of the Fourteenth Amendment's Substantive Due Process Clause – Failure

to Protect.  (Doc. 1 at 9).  Plaintiff consents to the dismissal of Count IV and V against the

Institutional Defendants.  *See* Doc. 19 at 1-2 ("Plaintiff agrees that East Stroudsburg

University and East Stroudsburg University Police Departments are not persons for § 1983

purposes").  Accordingly, the Court will grant Defendants' motion to dismiss the Institutional

Defendants from Count IV and V.  The Court will subsequently address whether these

claims should also be dismissed against the Individual Defendants.

Moreover, Plaintiffs acknowledge that the claims asserted in Count IV against the

Commonwealth Defendants are "not sufficiency pled," and thus "requests leave to amend to

include specific affirmative retaliatory acts complained of."  *Id.* at 2.

### C.   Pennsylvania Law Claims – Plaintiff Consents to Dismissal of Counts VI and VII

In Counts VI and VII of the Complaint (which Plaintiff mislabeled as Counts VIII and IX), Plaintiff asserts claims under Pennsylvania's Human Relations Act and Pennsylvania's Fair Educational Opportunity Act.  Again, however, Plaintiff now admits that the Commonwealth Defendants "are immune from PHRA and PFEOA" liability.  Accordingly, the Court will grant the Commonwealth Defendants' motion to dismiss Count VI and VII.

Thus, as Plaintiff concedes, the only issues remaining "for decision are Defendants' claims that Plaintiff has not adequately pled state created danger or personal involvement of certain defendants."  The Court will address each in turn.

### D.  Count V – Section 1983 Claim, State-Created Danger

The Commonwealth Defendants move to dismiss Count V of the Complaint for failure to state a claim upon which relief can be granted.  Specifically, they argue "[b]y alleging no affirmative actions by individual Commonwealth Defendants, there is no basis to find a Fourteenth Amendment substantive due process violation for failure to protect Plaintiff from another non-government actor."  (Doc. 15 at 22).  The Court agrees.

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state

law."[3] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).

In order to establish a constitutional violation under the Fourteenth Amendment alleging state-created danger, Plaintiff must plead and prove four elements: "(1) the harm caused was foreseeable and fairly direct; (2) the state official 'acted with a degree of culpability that shocks the conscience'; (3) the state and the plaintiff had a relationship such that 'the plaintiff was a foreseeable victim of the defendant's acts'; and (4) the official affirmatively used his authority 'in a way that created a danger to the citizen that rendered the citizen more vulnerable to danger' than had he never acted." *Kedra v. Schroeter*, 876 F.3d 424, 436 (3d Cir. 2017) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Regarding the first element, Plaintiff "must 'allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'" *O'Donnell v. Scranton Sch. Dist.*, 615 F. Supp. 3d 262, 276 (M.D. Pa. 2002) (quoting *Phillips*, 515 F.3d at 238). "Plaintiffs must allege that the awareness on the part of Defendants 'rises to the level of

---

[3] All the Individual Defendants are being sued in their individual capacities and there is no dispute that the Individual Defendants are state actors. *See Doe v. East Stroudsburg Unvi.*, 2023 WL 7548028, at *6 n. 9 (M.D. Pa. Nov. 13, 2023) ("East Stroudsburg University is part of the Pennsylvania State System of Higher Education," and "[a]n officer or employee of a state-owned educational institution is a Commonwealth employee.").

actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of harm.'"  *Id.* at 277 (quoting *Phillips*, 515 F.3d at 238).

As for the second element of a state-created danger claim, Plaintiff must show that each of the named Individual Defendants was deliberately indifferent.  "[A]ll that is required to satisfy deliberate indifference is conscious disregard of a substantial risk of serious harm . . . regardless of whether harm is either intended or certain to occur."  *Kedra*, 876 F.3d at 447; *see also O'Donnell*, 615 F. Supp. 3d at 279 ("The second element of a state-created danger claim requires Plaintiffs to plead sufficient facts to plausibly show that Defendants acted with a degree of culpability that shocks the conscience.").

"The third element of a state-created danger claim is that the plaintiff must plead 'a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state action's, as opposed to a member of the public in general.'"  *O'Donnell*, 615 F. Supp. 3d at 280 (quoting *Bright*, 443 F.3d at 281).

To adequately plead the fourth element of a state-created danger claim, "the plaintiff must plausibility show that 'a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.'"  *O'Donnell*, 615 F. Supp. 3d at 281 (quoting *Bright*, 443 F.3d at 281).  "The three necessary conditions to satisfy the fourth element of a state-created

danger claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to the danger than if the state had not acted at all." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007) (citing *Bright*, 443 F.3d at 281-82).

However, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282; *see id.* at 284 ("Liability requires affirmative state action; mere failure to protect an individual against private violence does not violate the Due Process Clause.").  And "mere assurance[s] cannot form the basis of a state-created danger claim." *Ye*, 484 F.3d at 640; *see id.* at 641 ("an assurance, in this case an expression of intent to help, is not an affirmative act sufficient to trigger constitutional obligations."); *see also Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) ("But as our precedent holds, assurances and failures to warn are not affirmative acts."); *Gardner v. Luzerne Cnty.*, 645 F. Supp. 2d 325, 338 (M.D. Pa. 2009)("If a state-created danger claim cannot be predicated on a failure to arrest, neither can it be predicated on a failure to provide protection.").

In addition, because Plaintiffs "§ 1983 claims require personal wrongdoing," *Mears*, 24 F.4th at 884, the Court must analyze her claims against each of the Individual

Defendants separately.[4]  *Id.*  In doing so, the Court must dismiss Plaintiff's complaint

against each Individual Defendant for failure to plausibly allege an affirmative act as to each

Individual Defendant giving rise to liability under the state-created danger claim.

William Parrish

Defendant William Parrish "was at all times relevant to this Complaint the Chief of

Police of Defendant PD and was acting under color of state law in the scope of his

employment as a police officer for Defendant University and Defendant PD."  Compl. ¶ 8.

Plaintiff further alleges she was accosted and harassed by Schultz and other students.  *Id.*

at ¶¶ 31-32.  After this incident, Plaintiff reported the incident and made multiple reports to

Defendant Parrish, *id.* at ¶ 33, however, Plaintiff alleges that "Parrish took no action."  *Id.* at

¶ 35.

After Plaintiff moved into her new dormitory, she continued to be harassed by

Schultz.  *Id.* at ¶ 40.  "Plaintiff then went to Defendant Parrish and asked that Schultz be

banned from her new dormitory; Defendant Parrish refused to help."  *Id.* at ¶ 42.  In

December of 2021, "Schultz imprisoned Plaintiff in his dorm room on multiple occasions,

sexually and physical assaulting her."  *Id.* at ¶ 51.  Plaintiff further alleges that one of these

assaults was caught on tape in the university elevator.  *Id.* at ¶ 52.  According to Plaintiff,

---

[4]      Neither the Complaint nor the parties address whether Plaintiff had a "special relationship" such that it could give rise to liability under the Fourteenth Amendment Due Process Clause.  As such, the Court does not address it here.

she went to Defendant Parrish, "who watched the video of the violent assault," *id.* at ¶ 53,

however "Defendant Parrish failed to take action."  *Id.* at ¶ 54.

Plaintiff then alleges that both she and her parents made numerous reports of

Schultz' abuse to the police and the University, *id.* at ¶ 84, but the "Defendants refused to

take action based on these reports."  *Id.* at ¶ 86.  Thus, according to Plaintiff, the

Defendants' "failure to act implicitly and affirmatively encouraged Schultz to continue his

abuse, knowing the police would not act, and caused further assaults upon Plaintiff."  *Id.* at

¶ 88.  And Plaintiff further pleads that Defendants' "action were outrageous and egregious

and increased the risk of future harm to Plaintiff."  *Id.* at ¶ 89.

Plaintiff's allegations against Defendant Parrish do not give rise to a cognizable

Section 1983 claim under the Fourteenth Amendment.  More specifically, Plaintiff's claim

fails against Defendant Parrish because she fails to plead any facts that Defendant Parrish

carried out an affirmative act, rather than inaction or omission.  *See Gardner*, 645 F. Supp.

2d at 341 ("In sum, the state cannot be held liable under the Constitution for a danger it did

not create.  While the events complained of are tragic, Defendants did not exercise authority

is such a way as to create the danger or make [victim] more vulnerable to attack by [third

party].").  More plausible factual details are required to survive a motion to dismiss, and a

formulaic recitation of the elements of a cause of action does not suffice.

Nick Timar

As to the allegations concerning Defendant Nick Timar, Plaintiff alleges that Defendant Timar "was at all times relevant to this Complaint a police officer at Defendant PD and was acting under color of state law in the scope of his employment as a police officer for Defendant University and Defendant PD."  Compl. ¶ 9.  The only allegations concerning Defendant Timar are as follows: (1) "In August 2021, both Plaintiff and her parents contacted Defendant PD on numerous occasions, informing Defendant PD of Schultz' abuse and seeking protection for Plaintiff while on campus in the upcoming school year," *id.* at ¶ 22; and (2) "Defendant Timar told Plaintiff and her parents to report any instances of abuse on campus and promised to take action against Schultz should any such report be received."  *Id.* at ¶ 23.  Plaintiff then alleges in Count V that both she and her parents made numerous reports of Schultz' abuse to the police and the University, *id.* at ¶ 84, but the "Defendants refused to take action based on these reports."  *Id.* at ¶ 86.

Plaintiff's allegations against Defendant Timar do not give rise to a cognizable Section 1983 claim under the Fourteenth Amendment.  Plaintiff's claim fails against Defendant Timar because she fails to plead any facts that Defendant Timar carried out an affirmative act.

Maria Cutsinger

Plaintiff alleges that Defendant Maria Cutsinger "was at all times relevant to this Complaint the Director of Student Conduct and Community Standards for Defendant

University and was acting under color of state law in the scope of her employment with Defendant University."  Compl. ¶ 11.  On October 11, 2021, "Defendant Cutsinger called Plaintiff into her office," *id.* at ¶ 37, and "Cutsinger forbid Plaintiff to enter her dormitory and ordered her to move dormitories."  *Id.* at ¶ 38.  "No restrictions were placed against Schultz," *id.* at ¶ 39 and "[a]s soon as Plaintiff moved into her new dormitory, Schultz began to show up there and harass her."  *Id.* at ¶ 40.  "Plaintiff reported this to Defendant Cutsinger, who refused to help."  *Id.* at ¶ 41.

Plaintiff's allegations against Defendant Cutsinger do not give rise to a cognizable Section 1983 under the Fourteenth Amendment.  More specifically, Plaintiff's claim fails against Defendant Cutsinger because she fails to plead facts that Defendant Cutsinger carried out an affirmative act.  It is true that Plaintiff alleges Defendant Cutsinger took an affirmative action when she moved Plaintiff to a different dormitory.  However, this act alone, cannot plausibly give rise to liability without more sufficient factual detail as to how this act, among other things, increased the risk of danger to Plaintiff.

<u>Kenneth Long</u>

As to Defendant Kenneth Long, Plaintiff alleges that he "was at all times relevant to this Complaint the Interim President for Defendant University and was acting under color of state law in the scope of her [sic] employment with Defendant University."  Compl. ¶ 12. The only other reference to Defendant Long in the Complaint is as follows: "Plaintiff sent an

email to Defendant University President, Kenneth Long, reporting the abuse and begging for help; she did not receive a response." *Id.* at ¶ 45.

Plaintiff's allegations against Defendant Long do not give rise to a cognizable Section 1983 under the Fourteenth Amendment.  Plaintiff's claim fails against Defendant Long because she fails to plead any facts that Defendant Long carried out an affirmative act.

Jennie Smith

As to Defendant Jennie Smith, Plaintiff alleges that she "was at all times relevant to this Complaint the Dean of Student Life for Defendant University and was acting under color of state law in the scope of her employment with Defendant University."  Compl. ¶ 13.  "On separate occasions in December 2021, Plaintiff and her parents … reported the abuse to Defendant University's Dean of Student Life, Defendant Smith."  *Id.* at ¶ 55.  However, "[n]o action was taken."  *Id.* at ¶ 56.

Again, Plaintiff's allegations against Defendant Smith also do not give rise to a cognizable Section 1983 under the Fourteenth Amendment.  Specifically, Plaintiff's claim fails against Defendant Smith because she fails to plead any facts that Defendant Smith carried out an affirmative act.

"Moreover, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint." *Phillips*, 515 F.3d at 228 (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

Accordingly, Count V is dismissed with prejudice as to the Institutional Defendants because Plaintiff concedes the Institutional Defendants are not state actions within the meaning of Section 1983.  Count V is dismissed without prejudice as to the Individual Defendants.  Plaintiff may amend her complaint to re-plead a viable state-created danger theory of liability against the Individual Defendants only.[5]  *See Phillips*, 515 F.3d at 236 (district court erred by dismissing complaint alleging state created danger liability without offering the plaintiff leave to amend); *see also Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 333 (M.D. Pa. 2023) ("The law in the Third Circuit is clear that leave to amend should be freely given.").

### E.  Count IV – Section 1983, First Amendment Retaliation

"To plead retaliation for the exercise of First Amendment Rights, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercise his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory actions." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017).

Plaintiff concurs with Defendants that it has insufficiently pled facts giving rise to a plausible cause of action under 42 U.S.C. § 1983 for First Amendment Retaliation.  (Doc. 19 at 2 ("In regard to Plaintiff's First Amendment Retaliation claim, after review of the briefs and

---

[5]    Plaintiff does not allege a "special relationship" with any of the Commonwealth Defendants which could rise to liability under the Fourteenth Amendment's Substantive Due Process clause.  As such, the Court only addresses whether the claims at issue plausibly give rise to liability under the state-created danger theory of liability.

caselaw, Plaintiff agrees that this claim is not sufficiently pled.  Plaintiff requests leave to amend to include the specific affirmative retaliatory acts complained of.").

Count IV is dismissed with prejudice as to the Institutional Defendants because Plaintiff concedes the Institutional Defendants are not state actions within the meaning of Section 1983.  Count IV is dismissed without prejudice as to the Individual Defendants. Plaintiff may amend her complaint to re-plead a viable first amendment retaliation claim against each of the Individual Defendants only.

## V.    CONCLUSION

For the foregoing reasons, the Commonwealth Defendants' partial motion to dismiss is granted.  Plaintiff is granted leave to file an Amended Complaint within twenty-one (21) days of the date of this order.  A separate order will follow.

Robert D. Mariani
United States District Judge